IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–02301–REB–KMT

DEBRA FRANKLIN,

      Plaintiff,

v.

MEDTRONIC, INC.,

      Defendant.

---

### RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

---

      This matter is before the court on Defendant Medtronic's "Motion for Summary Judgment" (Doc. No. 26, filed March 4, 2010 [hereinafter "Mot."]). Plaintiff filed a Response on March 26, 2010 (Doc. No. 37 [hereinafter "Resp."]). Defendant filed its Reply on April 6, 2010 (Doc. No. 39). Accordingly, the Motion is now ripe for the court's review and recommendation. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.

### I.    *STATEMENT OF FACTS*

      This case concerns injuries allegedly suffered by Plaintiff after Defendant Medtronic's Marquis DR Model 7274 Implantable Cardioverter Defibrillator ("7274 Device") was surgically implanted into her chest. (Compl. ¶ 22; Mot. at 1.) The 7274 Device, one of a number of similar Defibrillators manufactured by Defendant (Compl ¶ 9), is surgically implanted into its user for purposes of combating dangerous heart conditions (*id.* ¶ 11). More specifically, in the event that

its user suffers a rapid, life-threatening heart rhythm disturbance, the 7274 Device shocks the heart back into normal rhythm through "leads" that extend from the device and attach to the heart. (*Id.* ¶¶ 10, 12.)

On October 15, 2001, Defendant submitted a Pre-Market Approval Supplement[1] Application ("PMA Supplement") to the Food and Drug Administration ("FDA") to market commercially the 7274 Device in the United States. ( Samsel Aff. ¶ 22.) Under the Medical Device Amendment of 1976 ("MDA"), 21 U.S.C. §§ 360c–360n, to the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301–399a, a defibrillator such as the 7274 Device is a Class III device. (Samsel Aff. ¶ 11.) A Class III device is subject to the FDA's strictest regulations and oversight, because it is "for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health." 21 U.S.C. § 360c(a)(1)(C); (Samsel Aff. ¶ 8.) A Class III device may not be marketed or distributed without FDA approval pursuant to the premarket approval ("PMA") process outlined in 21 U.S.C. § 360e. (*Id.*) The FDA grants PMA only if it is persuaded that there is a "reasonable assurance" of a device's "safety and effectiveness." 21 U.S.C. § 360e(d).

---

[1] To be clear, a PMA Supplement is not any less extensive than an Original PMA Application. (Declaration of Timothy Samsel, ¶ 12, Doc. No 31, filed Mar. 5, 2008 [hereinafter "Samsel Aff."].) Rather, it is supplemental only insofar as it alleviates a manufacturer from re-submitting materials that are redundant of materials already submitted to the FDA pursuant to the PMA process for a previous or related device. (*Id.*) All existing material, as well as any new material, is subject to the same "rigorous" scrutiny that the Original PMA Application received. (*Id.* at 12, 22–25.) Here, because Defendant previously obtained PMA from the FDA for another Defibrillator model—the Gem DR Model 7271 Implantable Cardioverter Defibrillator—Defendant did not need to duplicate that existing material. (*Id.* at 12–25.)

The PMA Supplement for the 7274 Device was approved for market by the FDA on March 1, 2002. (Samsel Aff. ¶ 25; Ex. B.) The approval was subject to certain "Conditions of Approval" attached to the FDA's approval letter. (*Id.* Ex. B.) These conditions generally included submission of annual Post-Approval Reports, Adverse Reaction and Device Defect Reporting, and reporting under the Medical Device Report ("MDR") Regulation. (*Id.* ¶ 25; Ex. B.)

The parties agree that, at some point, Defendant learned that the battery contained within the 7274 Device could potentially malfunction. (Compl. ¶ 14; Mot. at 8–9.) More specifically, Defendant learned that the 7274 Device's internal battery could short, resulting in the battery depleting and leaving the device without any power. (Compl. ¶ 13; Mot. at 8–9.) The effect of this potential malfunction is to leave the user without the therapeutic effects of the device in the event that they suffered a heart rhythm disturbance. (*Id.*) Plaintiff also maintains that this defect can result in inappropriate electrical shocks even though the user is not experiencing heart trouble. (Compl. ¶ 13.)

The parties disagree, however, as to when Defendant discovered this defect in Defendant's Defibrillators. Plaintiff claims that Defendant first learned of the potential for battery malfunction in May 2002. (Compl. ¶ 14.) Defendant, on the other hand, maintains that it first received confirmation that an explanted Defibrillator had malfunctioned in April 2004, and that by the end of 2004, Defendant had learned that nine devices had exhibited the same internal shorting malfunction. (Mot. at 8–9.)

The parties also disagree as to the remedial actions taken by Defendant. Plaintiff maintains that despite learning of the defect in May 2002, Defendant "did not issue a recall or notify patients or physicians." (Compl. ¶ 19.) Rather, Plaintiff maintains that it was only in February 2005 that Defendant ultimately disclosed the defect to physicians and to the FDA. (*Id.* ¶ 20.) Plaintiff also alleges that at the same time, in February 2005, Defendant issued a world-wide recall for the device. (*Id.* ¶¶ 19, 23.)

Defendant, on the other hand, maintains that each malfunction discovered in 2004 was timely reported to the FDA under the MDR Regulation. (Mot. at 9.) Defendant also maintains that on February 10, 2005, Medtronic issued an advisory opinion to health care professionals about "the extremely low potential for battery depletion" that could occur in some of the Defibrillators with batteries manufactured between April 2001 and December 2003. (*Id.*) Defendant alleges that it concurrently informed the FDA that this notice was being distributed to physicians. (*Id.*) Finally, Defendant does not discuss any alleged recall of the 7274 Device or any of Defendant's other Defibrillators.

On June 20, 2002, Plaintiff had a 7274 Device surgically implanted into her chest to assist in her therapy for several dangerous heart conditions, including Prinzmetal's variant angina, myocardial infarction, and epicardial coronary artery spasms. (Compl. ¶ 22.) In February 2005, Plaintiff alleges her 7274 Device was subject to recall. (*Id.* ¶ 23.) In February 2009, Plaintiff's device allegedly malfunctioned by discharging five times in a row, even though she was not experiencing any heart trouble. (*Id.* ¶ 24.) Plaintiff maintains that her physicians thought that it was more dangerous to remove the device than to leave it implanted. (*Id.*)

Plaintiff alleges that, as a result of these events, she has suffered significant harm, including pain and suffering, physical injury and bodily impairment, increased medical monitoring, and emotional distress. (*Id.* ¶¶ 48–49.)

In her Complaint, Plaintiff alleges claims under Colorado state law for negligence, negligence *per se,* design defect, manufacturing defect, breach of implied warranty, breach of express warranty, misrepresentation, and negligent infliction of emotional distress. (*See id.*) In its present Motion, Defendant seeks summary judgment, claiming that all of Plaintiff's state law claims are preempted by Section 360k(a) of the FDCA because they seek to establish that the 7274 Device should have been designed, manufactured, tested, marketed, or labeled differently than the manner approved by the FDA. (Mot. at 2.)

## II.     STANDARD OF REVIEW

### A.     Pro Se *Plaintiff*

Plaintiff is proceeding *pro se.*[2] The court, therefore, "review[s] [her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

---

[2] While Plaintiff is currently proceeding *pro se*, she was represented by counsel at the time her Complaint was filed. (*See* Compl.) Thus, while her Response should be treated less stringently than if it were drafted by an attorney, because her Complaint was drafted by her former attorneys, it is not entitled to the same deference. Regardless, the court finds it unlikely that the resolution of Defendant's Motion would be any different even if Plaintiff had drafted her Complaint.

"conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle her to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.     Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the

allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## III.  *ANALYSIS*

Defendant maintains that all of Plaintiff's claims are preempted pursuant to the MDA's express preemption clause. (Mot. at 11.) Generally, Plaintiff's Response simply reasserts the allegations contained in her Complaint. (*See* Resp.) However, Plaintiff does maintain that the

MDA preemption does not prevent a state from providing relief where the state duties are "parallel," rather than in addition to, federal requirements.  (*Id.* at 3–4.)

### A.  Federal Preemption of State Law Claims under 21 U.S.C. § 360k(a) and **Riegel v. Medtronic**, *552 U.S. 312 (2009)*

In 1976, Congress passed the MDA, which includes an express preemption provision:

(a) . . . [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).  In *Riegel v. Medtronic*, 552 U.S. 312, 320–29 (2009), the Supreme Court construed this provision to hold that the plaintiffs' state law claims for strict products liability, breach of implied warranty, and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of a device approved by the FDA pursuant to the PMA process were preempted under the MDA.  In so holding, the Court employed a two-step analysis for determining that such state law claims are preempted.  First, the Court considered whether PMA of a medical device by the FDA imposes federal "requirements" under the MDA.  *Id.* at 322–23.  The Court recognized that PMA is "a rigorous process" in which "a manufacturer must submit what is typically a multivolume application."  *Id.* at 317–318.

It includes, among other things, full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a "full statement" of the device's "components, ingredients, and properties and of the principle or principles of operation"; "a full description of the methods used in, and the facilities and

> controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device"; samples or device components required by the FDA; and a specimen of the proposed labeling. § 360e(c)(1). Before deciding whether to approve the application, the agency may refer it to a panel of outside experts, 21 CFR § 814.44(a) (2007), and may request additional data from the manufacturer, § 360e(c)(1)(G).

*Id.* at 318.  Thus, because the PMA process amounts to "federal safety review" for specific medical devices, the Court concluded that PMA imposes federal "requirements" within the meaning of the MDA.  *Id.* at 322-23.

Second, the Court determined that permitting the plaintiffs to assert state common law claims would impose requirements "different from, or in addition to" the requirements imposed by the PMA process.  *Id.* at 323.  In reaching that conclusion, the Court noted that

> state tort law that requires a manufacturer's [device] to be safer, but hence less effective than the model the FDA has approved disrupts the federal scheme no less than state regulatory law to the same effect.  Indeed, one would think that tort law, applied by juries under a negligence or strict-liability standard, is less deserving of preservation.

*Id.* at 325.  Thus, because both prongs of Section 360k(a) were met, the Court concluded that the plaintiffs' claims were preempted.  *Id* at 330.

Following *Riegel,* "courts across the country have applied Section 360k(a) broadly, preempting all manner of claims from strict products liability and negligence . . . to breach of warranty . . . to failure to warn and manufacturing-and-design-defect claims . . . to negligence *per se.*"  *In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation* (*"Medtronic Leads"*)*,* 592 F. Supp. 2d 1147, 1152 (D. Minn. 2009) (collecting cases).  However, *Riegel* did not foreclose all prospect that a plaintiff could recover on state law causes of action based on an

FDA-approved medical device. "State requirements are pre-empted under the MDA only to the extent that they are 'different from, or in addition to' the requirements imposed by federal law." *Riegel,* 552 U.S. at 330 (quoting § 360k(a)). Thus, the Court held that States are not prevented from a damages remedy for "claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Id.* (quoting *Lohr v. Medtronic,* 518 U.S. 470, 495(2009)).

Having established this basic framework, the court turns to Plaintiff's particular allegations with respect to the 7274 Device and Defendant's arguments that these claims are preempted.

### B.    *Plaintiff's Claims are Preempted Pursuant to 28 U.S.C. 360k and* Riegel

First, as a threshold matter, the court finds that there is no genuine issue that the FDA established requirements with respect to the 7274 Device. A PMA Supplement was filed for the 7274 Device, and was approved for commercial marketing by the FDA on March 1, 2002 (Samsel Aff. Ex. B.) Plaintiff does not dispute this fact. Thus, the focus of the court's inquiry is whether Plaintiff's state-law claims allege requirements that are "different from, or in addition to," the requirements imposed by the FDA's PMA of the 7274 Device, or whether those claims instead "parallel" the FDA's regulations. *Riegel,* 552 U.S. at 330.

### 1.    *Negligence*

The court finds that Plaintiff's claims for negligence, design defect, and manufacturing defect are all preempted. Plaintiff's negligence, design defect, and manufacturing defect claims all essentially allege that Defendant should have designed, manufactured, tested, or marketed

the 7274 Device in a different manner. (Compl. ¶¶ 51, 64, 70.) "[N]egligence claims must be considered preempted to the extent that they allege that [the manufacturer] was negligent despite its adherence to the standards required by the FDA in its PMA for this specific product." *Mitchell v. Collagen Corp.,* 126 F.3d 902, 913 (7th Cir. 1997). Similarly, manufacturing and design defect claims assign different requirements for a device because they require a finding that the 7274 Device was defectively manufactured or designed, despite Defendant's compliance with the manufacturing and design standards established by the FDA's PMA of the device. *Medtronic Leads,* 592 F. Supp. 2d at 1157, 1161–62; *see also Horowitz v. Stryker Corp.,* 613 F. Supp. 2d 271, 283–84 (E.D.N.Y 2009). Thus, to the extent that Plaintiff's negligence, manufacturing defect, and design defect claims would require Defendant to have manufactured, designed, or marketed the 7274 in a manner different from, or in addition to, the FDA's PMA of the device, these claims are preempted.

Plaintiff's negligence claim also goes on to maintain that, in light of the potential for defect, Defendant should have recalled its Defibrillators or warned physicians and users of the defects and of the potential need to remove or carefully monitor the devices. (Compl. ¶ 52.) First, as to Plaintiff's claim that Defendant should have informed physicians and users of the defects, Plaintiff has not pointed the court to any FDA regulation that requires a device manufacturer to unilaterally contact doctors and patients regarding a potential device defect without FDA involvement. Thus, without more, the court cannot find that this aspect of Plaintiff's negligence claim constitutes a "parallel" claim beyond the reach of preemption under

Section 360k(a). *See Horowitz,* 6113 F. Supp. 2d at 282 (to proceed with a "parallel" claim, plaintiff must demonstrate that a *particular* federal violation lead to her injuries).

Second, in support of her claim that Defendant was negligent for failing to issue a recall, Plaintiff points to 21 C.F.R. § 7.3, the FDA regulation defining recall. (Compl. at ¶¶ 27–31.) However, Plaintiff failed to take notice of parallel sections of the FDA's regulations, which establish that even if the FDA requests a recall, 21 C.F.R. § 7.45, recall is a voluntary remedial measure to be undertaken on a firm's "own volition." 21 C.F.R. §§ 7.40, 7.46; *see also United States v. Superpharm Corp.,* 530 F. Supp. 408, 411 (D.C.N.Y. 1981). Thus, because FDA regulations do not require a firm to recall a product other than on a voluntary basis, a finding that Defendant was negligent for failing to recall the 7274 Device would establish requirements that are different from, or in addition to, federal requirements.

Altogether, Plaintiff's state law claims for negligence, manufacturing defect, and design defect would necessarily assign requirements that are different from or in addition to the requirements established by the FDA for the 7274 Device. Therefore, these claims are preempted under Section 360k(a). Accordingly, Plaintiff's claims for negligence, manufacturing defect, and design defect are properly dismissed.

### 2. *Failure to Warn*

Plaintiff's claim for failure to warn is similarly preempted. "The PMA process includes review of the device's proposed labeling. The FDA evaluates the safety and effectiveness under the conditions of use set forth on the label . . . [and] determine[s] that the proposed labeling is neither false nor misleading." *Riegel*, 552 U.S. at 318. Thus, allowing Plaintiff's failure to warn

claim to proceed would permit a finding that Defendant was required "to provide warnings above and beyond those on the [7274 Device's] product label – a label that was specifically approved by the FDA as part of the PMA process." *Medtronic Leads,* 592 F. Supp. 2d at 1159 (citing 21 U.S.C. § 360c(a)(2)(B)). Therefore, Plaintiff's failure to warn claim would establish labeling requirements different from, or in addition to, federal requirements for the 7274 Device. Accordingly, pursuant to Section 360k(a), this claim is preempted and, therefore, properly dismissed.

### 3.    *Breach of Warranty*

Plaintiff's claims for breach of implied and express warranty are also preempted. In *Riegel,* the plaintiffs alleged a claim for breach of implied warranty and the Supreme Court affirmed the dismissal of that claim on preemption grounds. 552 U.S. at 319–21. Indeed, allowing such claims to escape preemption would assuredly interfere with the PMA process. It would require a finding that Defendant designed or manufactured a medical device that was unsafe, despite the fact that it was federally approved in its design or manufacture. *Horowitz,* 613 F. Supp. 2d at 284.

The Supreme Court did not, however, have a claim for breach of express warranty before it in *Riegel. See Medtronic Leads,* 592 F. Supp. 2d at 1164 n.21. There is some continuing split amongst the courts as to whether claims for breach of express warranty are preempted under *Riegel. Compare Heisner v. Genzyme Corp.,* No. 08–C–593, 2008 WL 2940811, at *8 (N.D. Ill. Jul. 25, 2008) (express warranty claims not preempted), *with Medtronic Leads,* 592 F. Supp. 2d at 1164 (express warranty claims preempted). Nonetheless,

13

District Judge Blackburn in this court has explicitly concluded that claims for breach of express warranty are preempted because the PMA process includes a review of a device's proposed labeling and any representation contained therein. *Parker,* 584 F. Supp. 2d at 1303 (citing *Riegel,* 552 U.S. at 318)). There appears to be no compelling reason to revisit that holding.

Therefore, the court finds that Plaintiff's claims for breach of implied and express warranty are preempted. Accordingly, both of these claims are properly dismissed.

### 4. *Negligence* **Per Se** *and Misrepresentation Claims*

Plaintiff's claims for negligence *per se* and misrepresentation give the court more pause. As an initial matter, each of these claims alleges conduct that has already been determined to be preempted. More specifically, much like Plaintiff's claims for negligence, design defect, and manufacturing defect, Plaintiff's negligence *per se* claim alleges that Defendant was "careless in designing, testing, inspecting, manufacturing, marketing, warning, distributing and selling the Defibrillators with defects." (Compl. ¶ 12.) And similar to Plaintiff's failure to warn claim, Plaintiff's claim for misrepresentation alleges that Defendant made false or misleading statements or omissions about the safety of the Defibrillators in its labeling, advertising, and promotional materials. (*Id.* ¶ 93.) For the reasons outlined above, each of these claims is preempted insofar as they are based on requirements that are different from, or in addition to, federal requirements.

However, Plaintiff's negligence *per se* and misrepresentation claims go on to assert additional allegations that Defendant failed to comply with its obligations pursuant to federal regulations and under the FDCA. More specifically, Plaintiff's negligence *per se* claim

incorporates a number of FDA regulations promulgated under the FDCA, as well as provisions of the FDCA itself, and generally alleges that Defendant failed to comply with these requirements. (*Id.* ¶¶ 26–43, 59.) Similarly, Plaintiff's misrepresentation claim alleges that Defendant failed to duly report information to the FDA regarding safety of the 7274 Device because a February 2005 letter to the FDA and physicians "downplayed" the risks of continued use of the 7274 Device and other Medtronic Difibrillators. (*Id.* ¶ 94.) Thus, at first blush, these claims seem to be "premised on a violation of FDA regulations" and appear to be the types of "parallel" claims that are beyond the reach of Section 360k(a). *Riegel,* 552 U.S. at 330. However, upon a slightly more probing review, it becomes clear that these claims are likewise preempted.

First, to the extent that Plaintiff seeks to ground her negligence *per se* and misrepresentation claims on allegations that Defendant violated the FDCA—namely, by selling a misbranded and adulterated product (Compl. ¶¶ 32–33)—these claims are *impliedly* preempted pursuant to 21 U.S.C. § 337(a). *Parker,* 584 F. Supp. 2d at 1301. That provision states that all proceedings for the enforcement or to restrain violations of the FDCA "shall be by and in the name of the United States." § 337(a). Thus, because there is "no private cause of action under the FDCA," Plaintiff cannot avoid preemption simply by recasting her claims to allege violations of the FDCA. *Parker,* 584 F. Supp. 2d at 1301.[3]

_____

[3] Some courts have concluded that implied preemption under Section 337(a) not only bars state-law claims based on violations of the FDCA, but also bars claims based on FDA's regulations promulgated under the FDCA. *See, e.g., Medtronic Leads,* 592 F. Supp. 2d at 1160–62. However, District Judge Blackburn has held that implied preemption extends only

To the extent that her negligence *per se* and misrepresentation claims are premised on violations of federal regulations, Plaintiff "cannot simply incant the magic words 'Medtronic violated FDA regulations' in order to avoid preemption." *Medtronic Leads,* 592 F. Supp. 2d at 1158 (citing *Parker,* 584 F. Supp. 2d at 1301). Rather, "[t]o properly allege parallel claims, the complaint must set forth *facts* showing 'action or inaction in [defendants'] efforts to take part in the PMA process or implement its results.'" *Parker,* 584 F. Supp. 2d at 1301 (emphasis added). Merely alleging that Defendant generally failed to comply with federal requirements is insufficient to overcome the preemptive reach of Section 360k(a) without some factual detail as to why Defendant violated federal regulations. *Medtronic Leads,* 592 F. Supp. 2d at 1158 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554–55 (2007)); *see also Heisner,* 2008 WL 2940811, at *5 (N.D. Ill. Jul. 25, 2008) (a "vague suggestion that Defendant violated these [FDA] reporting requirements does not help Plaintiff avoid dismissal of his claims").

Altogether, to avoid preemption, Plaintiff must sufficiently allege a "parallel" claim in accordance with general pleading standards.[4] "While a complaint . . . does not need detailed

state-law claims brought pursuant to the FDCA itself, and not to state-law claims premised on the FDA's regulations. *Parker,* 584 F. Supp. 2d at 1300–02. This interpretation balances the preemptive effect of Section 337(a) against the Supreme Court's strong suggestion in *Reigel* that claims "premised on a violation of FDA regulations" would not be preempted. 552 U.S. at 330.

[4] The sufficiency of a plaintiff's complaint is ordinarily addressed on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. However, here because the issue of preemption under Section 360k(a) only became apparent when materials outside the Complaint—namely, the Samsel Affidavit—were considered, summary judgment is arguably the correct mechanism for reviewing Plaintiff's claims, notwithstanding the fact that preemption implicates the sufficiency of any purportedly "parallel" claims. *Burnhand v. Humphrey Hospitality Reit Trust, Inc.,* 403 F.2d 709, 713 (10th Cir. 2005) ([w]hen a party moves to dismiss under Rule 12(b)(6) and the district court relies upon materials from outside the complaint, the court [should convert the

factual allegations, a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (2007) (citations omitted). The court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). Indeed, the "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly,* 550 U.S. at 555 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

First, turning to Plaintiff's negligence *per se* claim, Plaintiff makes only conclusory allegations that Defendant failed to timely and fully investigate, analyze, and report adverse events and product failures; and also failed to report any labeling, manufacturing, device modifications, or design validations that might be necessary. (Compl. ¶ 42.) However, outside of a very general allegation that, in May 2002, Defendant learned of a potential that the batteries in its Defibrillators were defective, Plaintiff's Complaint is entirely devoid of any factual "circumstances, occurrences or events" that gave rise to Defendant's obligations under the FDA regulations. *Twombly,* 550 U.S. at 556 n.3. Indeed, Plaintiff does not point to a single adverse event or product failure that would compel Defendant to inform the FDA or take other remedial

_____

motion to dismiss into a motion for summary judgment); *but see Parker*, 584 F. Supp. 2d 1298 (addressing the issue of preemption on a Rule 12(b)(6) motion).

action pursuant to federal regulations. Moreover, even assuming that such events did occur, Plaintiff makes only conclusory allegations as to how Defendant actually failed to comply with the FDA regulations. Rather, its seems that Plaintiff hopes to point out that Defendant learned of a potential defect in its Defibrillators, and then point to Defendant's alleged recall of the Defibrillators in February 2005, and thereafter asks the court to assume (1) that there must have been adverse events and product failures involving the 7274 Device in the interim, and (2) that Defendant failed to comply with federal regulations regarding these events and product failures. These allegations amount to a mere "suspicion [of] a legally cognizable right of action," and do not state a "plausible" parallel claim for relief as required to overcome Section 360k(a) preemption. *Id.* at 555.

As to Plaintiff's claim for misrepresentation, Plaintiff references a specific letter that Defendant allegedly sent to the FDA in February 2005. (Compl. ¶ 94.) However, Plaintiff makes only conclusory allegations that Defendant "made misrepresentations" by "downplaying" the risks of continued use of Defendant's Defibrillators. (*Id.*) These allegations are not supported by any factual averments as to how this letter failed to comply with federal regulatory requirements or why it understated the risks associated with the 7274 Device and Defendant's other Defibrillators. Indeed, Plaintiff does not refer to any specific FDA regulation the February 2005 letter violated; instead she relies only on a formulaic statement that Defendant "concealed material adverse information regarding the safety of the Defibrillators when it had a duty to disclose such information to the FDA and to the consuming public." (Compl ¶ 92.) In the absence of any factual averments, Plaintiff has "offered the court little

more than a formulaic recitation of the elements of a 'parallel' claim, coupled with . . . generic allegations of wrongdoing." *Covert v. Stryker Corp.,* 1:08cv447, 2009 WL 2423559, at *15 (M.D.N.C. Aug. 5, 2009).

Finally, the court finds that Plaintiff failed to allege any facts establishing a causal connection between Defendant's alleged failure to comply with FDA regulations and her alleged injuries. "[I]n order to survive preemption under the MDA a plaintiff must demonstrate a cognizable link between the defendant's federal violations and plaintiff's injury." *Horowitz,* 613 F. Supp. 2d at 282; *see also Parker,* 584 F. Supp. 2d at 1301–02 (holding that although the plaintiff had produced warning letters suggesting that the defendant had failed to comply with FDA regulations, plaintiff did not allege that this failure rendered the device at issue defective). Indeed, this is a critical element of pleading a "parallel" claim because the PMA process is not intended to assure absolute safety of Class III medical devices; rather it establishes only that "any probable benefit to health" of a device outweighs "any probable risk of injury or illness from [its] use." *Reigel,* 552 U.S. at 319 (further noting that a device with only 50 percent survival rate was nonetheless approved because of the great potential benefit of that device). Thus, merely alleging some violation of FDA regulation will not suffice to establish a "parallel" claim, unless Plaintiff can factually demonstrate that the violation actually caused her injuries. *See Parker,* 584, F. Supp. 2d at 1301–02.

Here, Plaintiff only generally alleges that had her "health care providers and/or the FDA known the risks and dangers associated with Defendant's Defibrillators," Plaintiff would not have had the 7274 Device implanted in her body. (Compl. ¶ 47.) Setting aside the arguably

tenuous proposition that Plaintiff would not have had her device implanted when, even by Plaintiff's account, Defendant only first learned that the Defibrillators could potentially malfunction a month prior to her surgery, the fact that Plaintiff has failed to sufficiently allege why or how Defendant violated FDA regulations in the first place only exacerbates the clearly conclusory nature of Plaintiff's allegations connecting those violations to her injuries.

Altogether, the court finds that, although Plaintiff's negligence *per se* and misrepresentation claims are facially "premised on a violation of FDA regulations," the underlying allegations are far too conclusory and factually deficient to state a plausible "parallel" claim within the meaning of *Riegel.* 552 U.S. at 330. Accordingly, the court finds that Plaintiff's claims for negligence *per se* and misrepresentation are preempted under Section 360k(a) of the MDA and are therefore properly dismissed.

### 5. *Negligent Infliction of Emotional Distress*

Finally, Plaintiff's claim for negligent infliction of emotional distress alleges that Plaintiff "suffered severe emotional distress from the fear that she could suddenly die if her device malfunctioned and the distress of having the Defibrillator [actually] malfunction." (Compl. ¶ 102.) However, because this claim is entirely contingent upon Defendant's liability for the above preempted claims, this claim is similarly preempted. *See Riegel,* 552 U.S. at 321 (affirming the district court's conclusion that the plaintiff's claim for loss of consortium was preempted to "the extent it was derivative of the pre-empted claims"). Accordingly, the court finds this claim is properly dismissed.

WHEREFORE, for the foregoing reasons, this court

RECOMMENDS that the Defendants' "Motion for Summary Judgment" (Doc. No. 26) be GRANTED and that the Complaint and this action be dismissed in its entirety, with prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *U.S. v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's

report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 12th day of May, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge